**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4434**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

WILLIS TERRANCE DORSEY,

        Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Florence.  R. Bryan Harwell, District Judge.  (4:16-cr-00575-RBH-1)

Submitted:  June 21, 2018               Decided:  August 1, 2018

Before KEENAN and DIAZ, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

William F. Nettles, IV, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Florence, South Carolina, for Appellant.  Beth Drake, United States Attorney, Columbia, South Carolina, Alfred W. Bethea, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Willis Terrance Dorsey appeals from his convictions and 97-month sentence imposed pursuant to his guilty plea to possession with intent to distribute cocaine base and possession of a firearm in furtherance of a drug trafficking crime. On appeal, he challenges the denials of his motions to suppress and his sentence. We affirm.

I.

In reviewing a district court's ruling on a motion to suppress, we review the court's factual findings for clear error, and its legal conclusions de novo." *United States v. Cain*, 524 F.3d 477, 481 (4th Cir. 2008). When the district court denies a defendant's suppression motion, we construe "the evidence in the light most favorable to the [G]overnment." *United States v. Grossman*, 400 F.3d 212, 216 (4th Cir. 2005).

Dorsey first challenges the search of the rental vehicle he was driving.[1] Dorsey was stopped by Officer Michael Swaringer, Jr., who testified that he observed Dorsey swerving over both the center line (once) and the fog line (twice). Swaringer suspected that Dorsey might be under the influence or tired. After stopping Dorsey, Swaringer

---

[1] Because Dorsey was neither the renter nor an authorized driver of the vehicle, the Government argues that he lacked standing to challenge the search. Based on this argument, we held this case in abeyance awaiting the Supreme Court's decision in *Byrd v. United States*, 138 S. Ct. 1518 (2018). *Byrd* has now issued and the Court ruled there that "the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy." *Id.* at 1531. As a result, Dorsey has standing to challenge the search of the rental vehicle.

stated that he developed reasonable suspicion to extend the stop to permit a dog sniff. When the dog alerted, officers searched the car and seized a firearm.

Dorsey argues that Swaringer should not have stopped Dorsey's vehicle because weaving in traffic and failing to stay in the lane is not a traffic violation in South Carolina. Dorsey further submits that there was a lack of evidence that he was weaving out of his lane. South Carolina law states that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that such movement can be made with safety." S.C. Code Ann. § 56-5-1900 (2018).

Where the police have probable cause to believe that a traffic violation has occurred, a traffic stop and the resultant temporary detention may be reasonable. *Whren v. United States*, 517 U.S. 806, 810 (1996). A traffic stop may also be constitutionally permissible where the officer has a reasonable belief that "criminal activity is afoot." Whether probable cause or a reasonable articulable suspicion exists to justify a stop depends on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

Here, the officer's observation of Dorsey's repeated swerving out of his traffic lane provided probable cause to believe that Dorsey's failure to stay in his lane was neither practicable nor safe and, therefore, in violation of South Carolina traffic law. Moreover, the officer's suspicion that Dorsey's weaving might have been the result of an impaired driver was reasonable, and driving under the influence is a crime. *See South Carolina v. Salisbury*, 541 S.E.2d 247, 248-49 (S.C. 2001) (discussing elements of South

Carolina crime of driving under the influence); *see also Neal v. Virginia*, 498 S.E.2d 422, 424-25 (Va. App. 1998) (collecting cases from various states holding that weaving in one's own lane, without more, is sufficient to stop the vehicle and investigate further); *United States v. Banks*, 971 F. Supp. 992, 996 (E.D. Va. 1997) (finding reasonable suspicion to believe that driver might be intoxicated or fatigued when car was traveling slower than speed limit and weaving within its own lane); *United States v. Patterson*, 691 F. Supp. 908, 912 (D. Md. 1987) (noting that report of "erratic driving" provided reasonable suspicion to stop a car as the "defendant might be driving while intoxicated").

Dorsey next asserts that Swaringer lacked reasonable suspicion to detain Dorsey to permit a dog sniff. If Swaringer had "reasonable, articulable suspicion of ongoing criminal activity," the initial stop could be extended to investigate. *United States v. Bowman*, 884 F.3d 200, 213 (4th Cir. 2018). The reasonable suspicion standard is less demanding than the probable cause or preponderance of the evidence standards. *See Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). However, the facts must "in their totality serve to eliminate a substantial portion of innocent travelers." *Bowman*, 884 F.3d at 213.

Dorsey contends that the totality of the circumstances did not support reasonable suspicion. The facts articulated by Swaringer were as follows: the odor of recently sprayed air freshener, several packages of a brand of cigars often used to smoke marijuana, a supply of plastic baggies, the lack of a rental car contract, and the lack of a valid license. While the first three facts were innocent on their face, Swaringer testified that they were items frequently used in connection with drug trafficking. Specifically, Swaringer stated that the air freshener smelled as though it had been "just sprayed,

4

possibly attempting trying to mask an unknown odor." He further averred that Swisher Sweet cigars are "normally common used in the smoking of marijuana" and that it "stood out as odd as to why someone would pack their glove box with sandwich baggies," when there was no evidence of "bread, sandwich meat, cheeses or anything like that inside the vehicle." We find that the totality of the circumstances would eliminate a substantial portion of innocent travelers and that the totality of Dorsey's conduct was indicative of "more sinister behavior." *See Bowman*, 884 F.3d 218-19; *United States v. Foreman*, 369 F.3d 776, 785 (4th Cir. 2004) (use of air freshener added to reasonable suspicion); *United States v. Williams*, 271 F.3d 1262, 1271 (10th Cir. 2001) (finding discrepancies in rental agreement added to reasonable suspicion); *United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998) (finding reasonable suspicion based on Phillies Blunt cigar box in the glove compartment, where officer testified that such cigars are commonly used to smoke marijuana).

Thus, Swaringer had both reasonable suspicion (to believe that a crime was being committed) and probable cause (to believe a traffic violation had occurred) to initially stop Dorsey's car. Further, while conducting the traffic stop, the officer developed reasonable suspicion to believe that Dorsey was engaged in criminal conduct involving drugs. Thus, the brief detention to conduct a drug sniff was proper, and the dog's alert provided probable cause for the warrantless search of the vehicle. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005). Accordingly, the district court properly denied Swaringer's motion to suppress.

## II.

Dorsey moved to suppress his statements to Swaringer at the time of his arrest and his statements to other officers the day after his arrest. Swaringer testified at the suppression hearing that, after the firearm was found, he asked Dorsey whether it was his gun, and Dorsey replied that it was. However, the district court's review of the videotape showed that the officer asked Dorsey why he lied about not having a gun in the car, and Dorsey's response was unclear. In any event, whatever statement Dorsey made was not preceded by *Miranda*[2] warnings, and thus, the district court suppressed the statement. The next day, Dorsey was given warnings and interrogated by other officers. He denied ownership of the firearm and stated that he had not admitted ownership the previous day.

Dorsey contends that the district court erred in denying his motion to suppress the later statements. Citing *Missouri v. Seibert*, 542 U.S. 600 (2004), Dorsey appears to complain that the officers who interrogated him engaged in impermissible two-step questioning whereby they intentionally withheld *Miranda* warnings until Dorsey made inculpating statements only then to deliver the proper warning and elicit the same incriminating admissions. *See id.* at 604 (holding that giving "midstream" *Miranda* warnings after interrogation and unwarned confession could not effectively comply with *Miranda*'s constitutional requirement and a statement repeated after a warning should be suppressed) (plurality opinion).

However, there is no evidence that Swaringer intentionally delayed delivering *Miranda* warnings to provoke Dorsey's admissions. This lack of deliberateness renders

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Seibert* inapplicable to Dorsey's case. Without a showing of the officer's subterfuge, the mere fact that Dorsey made pre-*Miranda* statements and post-*Miranda* statements does not render his post-*Miranda* statements involuntary and inadmissible. *See Oregon v. Elstad*, 470 U.S. 298, 314 (1985) (holding "that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" as to any subsequent, post-warning statement); *United States v. Mashburn*, 406 F.3d 303, 307-10 (4th Cir. 2005) (holding that pre-warning questions will not render post-warning responses involuntary and inadmissible if there was no evidence that officer's failure to convey *Miranda* warnings was deliberate or intentional and that the post-warning statement was involuntarily made).

Here, Dorsey's second statement was taken by investigators not involved in the traffic stop. Moreover, his two statements appear to be contradictory, which further supports the conclusion that Dorsey was not manipulated into confessing based on his knowledge that the police already had elicited an earlier confession. Finally, there is no evidence that Swaringer's failure to give *Miranda* warnings was intentional; the questioning was brief and immediately followed the discovery of the gun. Because there is no evidence that officers deliberately engaged in a two-step strategy to elicit a confession, the district court properly denied the motion to suppress.

III.

Finally, Dorsey argues that the district court misapprehended its authority to impose a variance sentence on his drug conviction under *Dean v. United States*, 137 S.

7

Ct. 1170, 1178 (2017). *Dean* held that "[n]othing in [18 U.S.C.] § 924(c) [(2012)] restricts the authority conferred on sentencing courts . . . to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." 137 S. Ct. at 1176-77. Here, the district court clearly understood its authority to vary but chose to impose a Guidelines sentence on the drug charge. The court stated that it did so based on Dorsey's "Criminal History Category." The court further averred that it considered the sentence on the drug charge "for a while" and took into account Dorsey's mitigating circumstances, but ultimately determined that Dorsey's serious conduct required a Guidelines sentence. As such, this claim is without merit.

Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*